Cases 1-6-4261 United States v. Daryl Donohue Case number 1-6-4267 United States v. William Shurek Case number 1-6-4271 United States v. Kenneth Jackson Case number 1-6-4287 United States v. Dennis DiCiancio All arguments not to exceed 30 minutes to be shared by the defendants, 30 minutes for the plaintiff. Ms. Melissa Salinas, Supervising Attorney for Robert Kendall. Good morning, Your Honors. May it please the Court, I'm Melissa Salinas. I'm with the University of Michigan Law School and I'm supervising Robert Kendall and I have the honor of presenting him to the Court today. Thank you. Thank you very much. Good morning, Your Honors. May it please the Court. Robert Kendall on behalf of the appellant, Dennis DiCiancio. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal, please, if you may. Thank you. To provide some preliminary structure for the Court as to our opening argument, I intend to spend most of my limited time here today addressing the issues surrounding the routine admission of Kenneth Jackson's 1992 securities fraud convictions in direct violation of Rule 404B. Co-counsel that fall tend to cover similar issues and some other issues raised in this appeal. Your Honors, in the United States, most certainly in this circuit, there is no duty to disclose far-removed criminal convictions in a private sale of securities. The District Court's erroneous determination that these convictions were direct evidence or inextricably intertwined with the charged offenses incorrectly allowed the routine admission of these 1992 securities fraud and other criminal convictions throughout the trial. These convictions are meant... I would say you've done a really good job refocusing what you want the issue to be, but let me take you back to what I think the issue actually is here. If we assume that there's no rule or statute that says, thou shall disclose prior convictions, which I think is the case, you seem to be, at least in the briefing, giving short shrift to the elements of mail fraud and securities fraud that require the disclosure of something that would be material to a prospective investor. And how can you say that what happened here with Jackson would not be material to a reasonable investor? Sure. To answer your Honor's question, first I'd say under the mail and wire fraud statutes this Court has held in the United States v. Daniel that reliance by an investor is flatly not an element of mail or wire fraud. If you look at the Supreme Court's and this Court's jurisprudence on materiality, as far as the securities fraud statutes under Rule 10b-5, the Supreme Court held in Basic Inc. v. Levinson that silence absent a duty to disclose is not misleading under Rule 10b-5. I'd also direct this Court to this Court's decision in CA Monroe, where this Court held that in order to be actionable under the securities fraud statutes, misrepresentation or omission must pertain to the material information that the defendant had a duty to disclose, which this Court described as two significant limitations on the general policy of disclosure. How do you deal with Basic in the Supreme Court under the securities fraud context? Basic is interpreting Rule 10b-5. It also pertains to 15 U.S.C. 78J. But it says that materiality is satisfied if there's a quote substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available. Correct, Your Honor. So that's the government's theory here, as I understand it. Right, so materiality is certainly an element to the securities fraud statutes, but also so is a duty to disclose. The Supreme Court said this in footnote 17 of its decision in Basic, which is one of the most important sentences in that decision. As this Court emphasized in its 2005 published decision in CA Monroe, this Court said that a duty to disclose is an essential element of any securities fraud action. It's a necessary element. So without proving there's a duty to disclose, these convictions essentially were not material under the securities fraud statutes. There are other circuits that have specifically held that prior convictions, failure to disclose them can amount to a fragile omission. Right. So, Your Honor, there's no published decision of any court of appeals in the United States or the Supreme Court which have held that such convictions are direct evidence under the securities fraud statutes. I assume you're referring possibly to United States v. Stitsky or United States v. Bachansky. These are unpublished cases from other circuits. Specifically, United States v. Stitsky was a 2013 summary order from the Second Circuit. This is a case that, one, is unpublished, and two, has no precedential value even in the Second Circuit because it's a summary order. The cases that are pertinent in this circuit and from the Supreme Court are, again, this Court's decision in CA Monroe, which says that a duty to disclose is a necessary element. This Court has not held that a duty to disclose exists, especially for convictions that are 24 years old at the time of trial. In the Bachansky case, it seems like the Eleventh Circuit was finding a duty to disclose by virtue of the fact the defendant had held themselves out to be a legitimate business person. Isn't that what we have here, where we have people that are holding themselves out to be legitimate business people, but, in fact, one of them had prior crimes that should have been disclosed? I'd say yes, he is holding himself out as a business person. However, if you look at Bachansky, the defendant in Bachansky was holding himself out as a licensed medical professional, where the prior convictions essentially barred him indefinitely from practicing medicine or being any sort of medical expert. So there was certainly a material connection in that case. Here we're dealing with convictions that were from 1992. The charge scheme occurred from 2007 to 2013. It involved a needle destruction device or sales of securities for a needle destruction device. So we have at least a 15-year gap up to a 20-year gap where there's no intermittent connection between these two conspiracies. And for that reason, additionally, in regards to these convictions not being direct evidence, they're also not inextricably intertwined with the charged offenses. What's the standard that you suggest that we should be using to review this, assuming that your argument has some merit and there may be some question about whether this evidence should have been received? So the standard is the court should look at this under de novo review under this court's many decisions. Why isn't this clear? This court has held in several over a dozen published decisions. We've cited these in our reply brief. For instance, United States v. Murrayweather, United States v. Clay, United States v. Jobson. This court reviews de novo whether or not evidence was admitted for a legitimate purpose. Even if it's not objected to? Your Honor, it was objected to. Then we have to look to what was the objection. Sure. What was the basis of the objection here? Your Honor, Mr. Jackson filed a motion limine challenging this evidence under Rule 402, Rule 403, and Rule 404B. Where do I find in any of those objections the question of whether there's a duty to disclose? This is specifically mentioned in the motion limine under Rule 404B. There's one sentence, and no cases and no developments. You've developed this argument really well on appeal. There's no question about this. It would have been a much better argument had it been made, but unless you can point me to something, I can't find that the argument you're making now was actually made to the district court. If that's correct, then this is simply a question of a clear error standard of review. Your Honor, I think in the motion limine, also this was objected to numerous times throughout the trial for the specific reason that there's no duty to disclose. Do you have any citations to that? I would cite just the motion limine, which is cited in our opening brief. We also cite numerous objections at trial. The whole premise of the motion limine is 404B. Correct. So there is a sentence that says there's no duty to disclose. There's no development of that, there's no cases, and it's all in the context of 404B. Is that a fair characterization of what the motion limine was? Yes, Your Honor. I would say that this was objected to under 404B under the theory that there was no duty to disclose. I would also point this court to its decision in the United States v. Jobson, which is a 1996 published decision of this court, which says where a defendant objects to 404B evidence, essentially other bad acts or other prior crimes evidence, this court requires the district court to make a finding that the probative value of the evidence was not substantially outweighed by the prejudicial effect. Here the district court did not do this. The district court essentially entered a perfunctory marginal entry order, which was no more than a few sentences long. This court in Jobson said essentially that this is reversible error in and of itself. There is no 403 finding on the record. This court said a similar thing in the United States v. Meriwether, where the court found reversible error, where there was admission of a defendant's conspiracy that was not connected with the charged offenses. Additionally, I refer this court to United States v. Clay, where this court found reversible error, where the government entered 404B evidence, where a witness had testified in a single instance that the defendant had assaulted her, and this was considered reversible error. If you look at the present case, you can see this evidence was entered over 100 times. Jackson and his co-defendants, by extension, were essentially painted as career fraudsters. Jackson was numerously, many times, called a felon. The government routinely mentioned he had securities fraud convictions. Let's talk about this multiplicity, if we can call it that, argument that you're making, because that's replete throughout all of these briefs. There was a 404B motion made. Nobody questions that. Do you have some sort of argument that you can make that the judge should have anticipated how many times this would have been referred to during the course of the trial, in advance of the trial even starting? I think that's certainly a concern. Our argument is that this evidence was not offered for a legitimate purpose. I got that, but your argument that you're making now is the fact that, gee, they brought this up a lot of times, so therefore it must have permeated the trial and resulted in reversible error. That's your argument, right? Correct. Is there some sort of contention that that should have been addressed differently by the judge in advance of the trial, inasmuch as it wasn't raised? I think the number of times it goes essentially towards harmless error, and I think it also goes towards an error in being admitted for a legitimate purpose. The number of times goes to the question of an objection that should have been made during the trial, shouldn't it? Assuming that the evidence was admitted pursuant to the ruling, then all of a sudden it's taking over the trial. That's essentially your argument. Correct. At any point during the trial, was that objection raised that, look, this is being overblown, it's being raised too many times, it's cumulative? I can't find a cumulative objection in the record. Your Honor, I think the objection, so this evidence was objected to numerous times during the trial. On the basis of it being cumulative, which is essentially what you're arguing now? That's certainly part of our argument. I don't believe specifically, to answer your question specifically, I'm not sure it was objected to for that specific reason, but I can say that when it was entered, multiple counsels stood up and objected to it throughout the trial. I see that my time is, I have no time remaining. If there are no further questions, I'll yield to co-counsel. Thank you, Mr. Kendall. Thank you. Good morning, Your Honors. May I reserve two minutes for rebuttal? Yes, you may. Thank you. May it please the Court, my name is Rachel Frank and I represent Kenneth Jackson. The government abused the very narrow ruling set forth by the district court as to how the prior convictions could come in. The district court created this very small doorway stating that these convictions could come in to show that Mr. Jackson had made material misrepresentations. The government drove a truck through that ruling. They made relentless, dangerous, and egregious references to Mr. Jackson's convictions. They called him a criminal, a convict, a liar, and a felon. Is he not any of those? He is, Your Honor, but those words, especially associated with these convictions, would very likely create within the minds of the jury that because he was guilty then, he must be guilty now. Did you make this argument in your brief, that they used bad words? Yes, Your Honor. The trial very quickly became about Mr. Jackson's past, about crimes that he had already been convicted of and sentenced for, and not about what he was on trial now. The government abused that ruling in its opening statement, in every single direct examination, every single cross-examination. Was there an objection to the opening statement? I believe there was an objection during the first direct exam, Your Honor, but the issue itself was argued via motion and limine prior to trial, during voir dire as well. There were multiple objections made by his trial counsel during counsel. Overall, the government referenced the convictions over 100 times. Those references and that abuse affected Mr. Government's right to a fair trial, coupled with the district court's giving of a flawed jury instruction regarding how those convictions could be interpreted. That was the fraud instruction that you requested. Mr. Jackson's trial counsel did request that instruction. However, that was... Given almost verbatim to the instruction that was requested, right? That is correct, Your Honor. That instruction was based on the Sixth Circuit pattern instruction. Yes, Your Honor, but Mr. Jackson's trial counsel first proposed a different instruction, proposed a standard 404B instruction, but was denied by the district court. So he did not get the instruction that he first asked for, and unfortunately had to take what he could get in terms of an instruction. He couldn't get the one he wanted, so he had to give an imperfect one. But moreover, it is the district court's responsibility to give clear, concise, and easy-to-understand instructions. That is the district court's responsibility. How the convictions could be... Do you have any cases that suggest that when a judge gives a pattern instruction that the circuit's already approved, that they're then not giving a clear and concise instruction? Well, Your Honor, in United States v. Demler, the court suggested that because the defendant had proposed the instructions that he could not find relief. However, that is not the case here because Mr. Jackson's counsel did propose a standard jury instruction. These instructions did not fit this case because in the first sentence, they state that the convictions can be used to determine whether or not he made material misrepresentations. In the next sentence, they state that they cannot be used to determine guilt. These instructions contradict each other in the very next sentence. They would have very likely confused the jury to the point that they would have had no idea how to consider the most important piece of evidence. The most important piece of evidence at trial was these prior convictions. It permeated the entire trial. It was woven through the government's case. I'm trying my best to follow you, but it seems like you're conflating at least two, if maybe not three, different arguments all in the same sentence this year. At first, the argument was the wrong instruction was given. Then we were talking about within that instruction, was that instruction confusing? That's what I was asking you about because I understand you say they wanted instruction A and they got instruction B. But instruction B was drafted by his attorney. How could he now complain that the instruction that he drafted had this confusing word usage when he proposed that instruction, whether he wanted it or not? Because it is the district court's responsibility to give instructions. Whether or not they're proposed by trial counsel, the district court has to give instructions that will adequately instruct the jury on how to consider an issue. I think we all agree with that, but how do we deal with invited error? If you propose an instruction, particularly one that's consistent with the pattern instruction, you invite the court to give it, you don't complain about it, and then on appeal you say, geez, that was unclear. That's just classic invited error, isn't it? It is not invited error, Your Honor, because Mr. Jackson's trial counsel tried to give a prior instruction. He tried to give a typical pattern 404B instruction. That is not what he was given. The district court did not allow that. But essentially you're saying because he didn't get the instruction he wanted, he gets license to then offer a confusing instruction in its place, and then he's not responsible for what he now contends to be the confusing nature of the instruction. Because it is the district court's responsibility to give the instruction. Trial counsel can propose the instruction, but it's up to the district court to accept the right one that will instruct the jury properly. And was it consistent with the pattern instruction? It was consistent with a pattern instruction, but not one that applied to this case, because the evidence came in not under 404B, but as direct proof and as inextricably intertwined evidence, he didn't get a standard 404B instruction. But this instruction, it attempts to be a 404B instruction and limit the way in which the jury could consider the conviction, but ends up saying two different things. In its opening statement, the government referenced the specific term of imprisonment that Mr. Jackson faced for his prior convictions. They said that he had gone to eight years because of what he had done. Not only is that a prohibited argument, but it creates a very dangerous propensity argument for the jury to consider, that he did a serious crime in his past, he was a bad man then, so he must be a bad man now. Am I right that the eight years only came up once in the trial and that was one sentence in the opening statement? It was, Your Honor, but it was during the opening statement. Was it a four-week trial? It was a three-week trial, Your Honor, between three and four weeks. And the government requested and the court gave the instruction that says both opening statements and closing arguments are not evidence. The district court did give that. Am I right? Yes, they did give that instruction. So you're focusing on one sentence in a three-week trial. Yes, Your Honor. That was encompassed within the court's instruction not to consider that as evidence. Yes, Your Honor, but it was during opening statement. When the jury is supposed to have an open mind to hear all of the evidence, the government tainted the jury. Have there been cases where we've ever reversed a conviction because of one sentence in an opening statement? No, Your Honor. Your Honor, in United States v. Burns, this court discussed improper remarks, but this comment- They have to be vagrant. They have to be sequenced. Correct, Your Honor. We don't have any of that here, do we? Well, that comment itself was singular, but combined with the multiple references to Mr. Jackson's convictions throughout the case, while that reference to his specific term of imprisonment had no bearing on whether or not he had made material misrepresentation, the government's only purpose was to show the jury that because he committed a crime then, he must have done it now. Mr. Kendall wasn't sure whether the record contained any cumulative argument, objection. Do you know whether there was one made during the trial? Objections to- This idea that they kept bringing it up, that seems to permeate these briefs. There are objections to they shouldn't have been able to use it to begin with. I get that. Was there any objection during the trial to the manner in which it was then being used, i.e., repeatedly, same thing over and over again? That's a cumulative objection. Was that made during the trial as far as you know? I do not know if objections to the cumulative nature were objected to, but even if there wasn't an objection made to the specific egregious number of references, it doesn't change the fact that the references and the convictions permeated the entire trial and created a situation where Mr. Jackson did not receive a fair trial. His substantial rights were affected in a negative way. I see my time has expired, if I may briefly conclude. In light of the government's opening statement, the unfettered use of the convictions, and the confusing instructions, we request that Mr. Jackson receive a new trial. Thank you. Thank you, Ms. Frank. Good morning, Your Honors. This is Jeff Hastings on behalf of Mr. Shurick. Judge McKeague had inquired about the materiality of Mr. Jackson's convictions in the fraud statute. Assuming arguendo they are material and not conceding any argument that's made forth by Mr. Kendall and Ms. Frank on behalf of their clients, and also assuming arguendo that his prior convictions are inextricably intertwined with the charged conduct of the defendants, this Court has always held that a 403 analysis should nevertheless still be done, and one was not done. Your Honor had pointed out whether there were objections to cumulative references to a conviction. I was trial counsel, one of the trial counsel, and assuming arguendo there wasn't or I can't recall it, we did all object. And after a while, you stop objecting because it's very clear that the trial judge is going to allow this in. Now, I would say the focus should be on the fact that there was no 404B analysis or 403 analysis that was filed in the motion limit prior to trial. And so the Court was put on notice, and Your Honor, I would argue on behalf of Mr. Shurick, is assuming it is inextricably intertwined, his convictions, a 403 analysis should have been done. Can I interrupt you to ask you this question? I think you all raised some interesting arguments. I don't mean to in any way diminish the arguments that you're making, but on the balancing test question under 403, what I'm confused by is what would that 403 balancing analysis have consisted of? If we assume for a second that both the wire fraud, the mail fraud, and the securities fraud all include this sort of vague concept of materiality, the government is asking these investors would this information have been material to them? That's another irony in this case because obviously they're going to say yes to that in hindsight. Had the judge gone through the rote 403 balancing, if the judge is right that it was res gestae evidence, what could the judge then have done to somehow have limited the prejudicial impact of that? I want you to assume for a second, but you can address this, she can't strike it because it's res gestae evidence. It's going to come in somehow, so what would have been achieved by the 403 balancing that wasn't achieved here? Assuming that she determined the probative value was substantially outweighed by its unfair prejudice, she could have precluded it from coming in. There was other many proofs that the government had in regards to emails, testimony, letters, that they could have proved fraud, misrepresentations, without the prior convictions, Your Honor. If the government is alleging fraud, do you have any cases that say under 403 the nature of the fraud, which is the essential element of the crime, the government can then be barred from presenting that to the jury? That just intuitively doesn't seem to make any sense to me. In regards to what I just stated, the court could say, you know what, you're not going to use it in opening, you're not going to use it in closing, you're not going to use it so often that it becomes propensity evidence. I'm going to keep control of this, and we never had that. So what we had were these gentlemen were being tried, convicted, not on the crimes they may have committed, but on what they became because of the pernicious use of these convictions during the course of the trial. I'd just add, Your Honor, you talked about a three-week trial, maybe three weeks in a day. That makes it all the more propensity evidence because they're hearing it day in and day out for three weeks, and at the end of the day… Let me ask you a question in a slightly different way. In the context, then, of the objection, which I agree you made, what you and the attorney for Dicentio made is a question that's an open question in my mind, but there was an objection made. Did anybody ever say to the judge, look, we think you're wrong on 404B. We don't think you should have received this evidence, but if you're going to let it in, you need to cab it in some way along the lines of what you just said. You can ask a couple witnesses, but you can't put it in the opening. You can't put it in the closing. Was any of that kind of proposal ever made to the judge? I believe on the record, Your Honor, I don't know that it was cited in our briefs, but I do recall having sidebar with the judge at one point. It's even, I think, referenced in one of the briefs where counsel had objected to the continuing reference of Mr. Jackson's convictions as well as what they were for and how long he spent time in jail. So there was that made to the judge, I recall. Were the sidebars recorded in the case? They were. I don't know if it's a part of the record, Your Honor. My time, I yield. Thank you. Thank you, Mr. Hastings. Mr. Goldberg, are you on the telephone? I am. You may proceed. You have four minutes for your argument. Thank you. May it please the Court. Michael Goldberg from the Goldberg Law Firm. I represent Appellate Daryl Donahue, and I do appreciate the Court's accommodation of allowing me to appear by phone. We are asking on behalf of Mr. Donahue to reverse his conviction and remand the matter for retrial. And the areas that I would ask the Court to focus on are, again, the 404B arguments that are made very well by counsel. I'd also ask the Court to consider the enhancement that related directly to or in the context of Mr. Donahue's sentencing, adding two points to his calculation under the victim enhancement for serious harm under 2B1.1B2C of the United States Sentencing Guidelines, making his sentence procedurally unreasonable. I'd also ask the Court to look at the trial court, the district court's failure to apportion any of the loss, offset any of the loss in this case, by the value of the MSS shares that were retained by the victims in the case. The Court essentially making a finding that the shares were valueless, where there was, I do believe, ample evidence on the record that they were not. With regard to the 404B analysis, I do think that Mr. Donahue stands apart from the other defendants in this case. Mr. Donahue had no financial part of this company. Mr. Donahue dealt specifically with the preparation of materials for regulatory approval, preparing notebooks and documents and other filings to be able to market the product, and he was working at the direction of Mr. Jackson. He had no control over and never took control over any bank accounts. There was substantial evidence in this case of money being moved from account to account by other defendants. He never received any type of undocumented compensation. He received a salary of $1,000 per week for his full-time work in this consultant role. So when you look at Mr. Donahue, he has to stand trial with his co-defendants as somebody who is charged in a conspiracy. However, with regard to the repeated infusion of Mr. Jackson's prior record into the trial record, I think Mr. Donahue stands apart in the degree of prejudice he sustained because there was very little evidence, other than his association with this company and with Mr. Jackson, that ties him into the conspiracy. The record shows that he spoke to maybe two investors out of the hundreds of investors prior to their investment in the company. Other than that, his role with the company was to prepare documents and to do this internal workload. Mr. Goldberg, isn't there some evidence that Mr. Donahue made false statements about personally communicating to the FDA and external FDA consultants? That's correct. There was, and I did disclaim that there were one or two instances. There was a shareholder with the last name of Boyce who had made inquiries to Mr. Jackson, and eventually the evidence was that Mr. Jackson instructed Mr. Donahue to tell Mr. Boyce what the status of the FDA approval process was, according to Mr. Jackson. And Mr. Donahue did make representations. The representations were made in the third party, such as, we have spoken to the FDA, we are expecting an answer back. Although it was characterized as he was making representations that he had personally spoken to the FDA, that wasn't in fact the representations that were in evidence at trial or in these emails. He did also sign a shareholder letter that was sent out to the shareholders indicating that there were overseas sales of this product that probably did contain some misrepresentations from Mr. Jackson, and he had signed this letter at the behest of Mr. Jackson because Mr. Jackson was out of the country. So yes, he did make those two overt actions at the behest of Mr. Jackson and did communicate with shareholders. Mr. Goldberg, your time is up. Thank you for your argument. Thank you very much. And I will conclude with that. I would ask the court to reverse and remand based on the three issues that I've raised. Thank you. Thank you. Good morning, Your Honors. Rebecca Lutzko on behalf of the United States. Your Honors, it's very clear that you're very familiar with the record in this case, but I would like to point out that this case was not simply about the material omission that defendants made in connection with Mr. Jackson's prior convictions, but there was significant evidence starting from the opening statement throughout the entire trial and through to the close focusing on the multiple lies and material affirmative misrepresentations as well as multiple omissions that the defendants made that were material to investors. Chief among those were the misrepresentations about the status of this FDA filing, this device that the defendants used as the product for this scam, the Sharps Terminator required FDA pre-market approval. And beginning in 2007, the defendants told investor after investor after investor that they had filed that application with the FDA and that approval was imminent any day now, coming next week. And that the record is replete with the witnesses explaining those representations by the various, all four different defendants in this case. Counsel, is it the government's position that it's harmless error if we find that all of this evidence regarding the prior convictions was improperly admitted? Would it be the government's position that it's harmless error because there's so much evidence of other misrepresentations? Ultimately, Your Honor, yes, but I don't think you have to go, not even I don't think, you don't have to go there because the admissions of this prior conviction were tied specifically to the material omissions made to the investors and how that affected the investors' willingness to invest. I'd like to ask you a couple questions about that. Certainly. For a second. I think this case poses an interesting question of if there isn't a specific statutory or regulatory rule that pertains to prior convictions, then I think that is the case. Is that right? Yes, Your Honor. So you have to fit within this more general materiality element of any of these three crimes that you're offering this evidence in connection with, right? Correct, Your Honor. So I'm just curious, how is a promoter of a product like this to know what might be material that, in the minds of a reasonable investor, before the fact, in the absence of any statutory or regulatory duty? Well, Your Honor, this is not even a close call. The Daniels case that this circuit set forth made very clear that a scheme to defraud is not defined according to a technical standard. As this court noted, it's a reflection of moral uprightness, of fundamental honesty, fair play, and right dealing in the general and business life of members of society. And what you have here is a person, Mr. Jackson, who was convicted of a very extensive securities fraud scheme that involved millions of dollars and sent him to jail for eight years. Then you have him turning around, getting out of jail, and seven years later he is promoting another securities fraud, or securities transactions, which ultimately were proved to be fraudulent in nature. And all of his co-defendants were aware of this conviction. In fact, Mr. DiCiancio was involved personally in SEC proceedings that related to the conviction of Mr. Jackson and ultimately the disgorgement order. That's a lot of words. So what are you saying, that he should have known this one was required to be disclosed as opposed to some other crime because it was also a securities crime? Well, not only is it a securities crime, but it goes to honesty. Do you look at the nature of the crime? Do you look at the temporal relationship of the prior crime to this scheme? What does the promoter take into account in determining whether he or she has to disclose it? Well, the promoter here has a standard of disclosing to a reasonable investor information that would affect the reasonable investor's decision to invest. And how they determine that? Here, when you know, I mean it is a factual determination, but when you know that the primary person who is controlling all the money here has these convictions in his background combined with these affirmative misrepresentations about the FDA. When somebody is deciding whether to disclose something in advance, particularly whether you put something in Prospectus A or Prospectus B, you can't then combine that with subsequent misrepresentations that they make about the status of FDA approval over the course of the next several years. They are temporally distinct. So, Your Honor, I guess to answer your question, hopefully more directly, is that you have the principal person. These convictions involve the principal person in charge of this company. And what I hear you saying is they just should have known. That it is reason and common sense, yes, Your Honor. Isn't the Supreme Court having a lot of trouble lately with convictions based upon reason and common sense? I would tend to agree with you there in the Johnson context, Your Honor. Certainly. However, when you have the officer who is essentially the president of the company, but not in name. He is disguised as the R&D director. But the person who is controlling the money, who is calling the shots here, and has this prior conviction for securities fraud, an extensive securities fraud, reason and common sense tells you that is something that these investors would want to know. And when we ask these investors, I mean, they didn't know it for a very, very long time. And there is testimony at trial. Once they found that out, after years of being told this stuff is coming, it's coming, the FDA approval, they realized right then their money was gone. They would not have given their money to this company knowing that the person calling the shots had this prior conviction, not only for securities fraud, but also for perjury, for lying, for theft. They're surely not saying that they should have known it was material because in a trial five years later, when somebody has lost their money, they're going to say it would have been important to them. Of course the investors would say that. Well, Your Honor, of course the investors would say that. But also they would say that on the front end. Your Honor, I would submit to you if you were asked to, as Dr. Birdsong invested, I think $300,000, it may have been $600,000 that he put in by the end of the day. But regardless, a significant amount of money. Before you do that, you reasonably want to know. And that's something that affects the total mix of information about whether these people are honest. This is so important, particularly in the securities context. Are you surprised there isn't a duty to disclose that's spelled out? But, Your Honor, I think that duty to disclose is spelled out through the case law in the various cases that we've cited in the context of- Have you ever prepared a prospectus? Have I prepared one? No, I've reviewed them. So when you go back and you're representing somebody and you prepare a prospectus for them, and you look at what the regulations are, it tells you lots of things that you have to disclose. You have to put them in the prospectus. It's right there in black and white. But if this is so important, I'm just curious, why isn't that there? Why doesn't it say you have to disclose what the income is, for example, for the people involved in the company? So if you have to put what they're making, why don't you have to put in there whether they're criminals? It just seems obvious. I think that's implicit in the broader requirements of what you have to disclose. Whether it's spelled out in black and white, Your Honor, I'm not aware of such a regulation. It is spelled out for the registration statement that if it's 10 or more years- As I understand it, that SK regulation says that if it's older than 10 years, you don't have to disclose it in a registration statement for a publicly traded company, a prior conviction. Isn't that what the regulation says? Your Honor, I would have to confirm that. However, in this case, although you have a conviction also that's in 1992, that conviction did- That would be within 10 years? Well, the 1992, but the end of the conviction when he was released from prison was within 10 years. Because that was within- He was released at the tail end of 1999 or the beginning of 2000, and this scheme began in 2007. Ms. Lutsko, let me ask a question. Your Honor. So the record shows that some or all of the co-defendants knew about Jackson's convictions. Correct. Did anybody file a motion to sever the trials? I do not believe so. My recollection is they did not. Okay. But I would have to double-check the docket. My recollection is they did. But there was a motion in Lemony which exposed the whole thing in the record. Absolutely. Your Honor, and as Judge McKeague pointed out, that motion in Lemony was focused on 404B. And in particular, I would note a case that I don't believe we did cite in our brief, but I would also bring to the Court's attention. It's the Hoffacker case. It's 530F3-137 out of the Third Circuit, and specifically at page 189. This is a case that doesn't involve a criminal conviction, but involves also the SEC bar to a corporate officer. So it's akin to the SEC part of this disclosure. And specifically in that case, they note that they're referring to that as intrinsic to the crime. It's the same thing. It's a material omission, a failure to disclose, I believe, in a prospectus in that case. And they note that even if the evidence is extremely prejudicial to the defendant, the Court would have no discretion to exclude it. And that goes to Judge McKeague's question to one of the appellant's counsels, that there were no objections about the scope of how this could come in. So the objections were an all or nothing objection? That's how they were made. They were made up front, and they were made on the basis that it was 404B and that it shouldn't come in. What we're arguing here is really 403 on the balancing question. So on the 403 arguments, were they all premised as all or nothing as well? Yes, Your Honor. That's my recollection. And, again, I would defer to the motion eliminating itself. But my recollection is that it was all premised on this should not come in, period, end of story. Not about scope, not about limitation, not about cumulative, whether you can raise it in the opening or not. And can you add anything on the question of whether this motion eliminate was just a 404B motion, or was it also a duty-to-disclose motion? That's what Mr. DeCiano's counsel argues now on appeal, I think pretty effectively. I can only find one sentence in the motion that deals with a duty-to-disclose. You then come back and you say, well, it was a duty-to-disclose under the cases that we've been talking about today, and there's no reply brief. Correct, Your Honor, and that is correct. And defense counsel… Were any of the cases that are being presented to us presented to the district judge that have been so effectively argued by Mr. Kendall today? No. No, Your Honor. This was raised as a 404B issue. The government responded and cited Stitsky and Bachinski and Lewis and Holfacker and Basic, Inc. and Daniels, and all of those cases setting forth the standard in wire fraud context as well as the securities fraud context in particular. And those rulings in all those various courts that this is a relevant issue for the jury to decide. And there was not a reply, and I don't believe any of the cases that defense counsel is now… or that appellant's counsel now cite were ever brought to the attention of the court, nor was there a request that the district court somehow limit the scope or the manner in which this information came in. Your Honors, if I could… I don't know if you… Oh, specifically about the jury instruction. Defendant Jackson does raise an issue about that, and Your Honor, you are correct that that is… it's actually a combination of two patterned Sixth Circuit jury instructions that were proposed by the defendant. It is specifically the 404B instruction with an extra sentence, I believe, from the impeachment instructions, which are Sixth Circuit pattern instructions 7.05A and 7.13. And that language is verbatim from that. So the government would submit that's not confusing, certainly not in the context of this case, and it was to the extent it was. It was invited error. Can I go back to ask you a much, much more broader question that just sort of troubled me in reading all of this? We see a lot of prosecutions by the government where something appears as if it started out to be a scam right from the very beginning. It was just a device to raise money, and nobody ever intended to use the money for the purpose for which they said they were going to use it. That doesn't seem to be the case here. It looks like these guys, correctly or incorrectly, thought they had a good product, and they could make a success of this. They could make a lot of money. So it just looks like they started out with largely proper motives. And what really happened here is as it went along, the fraud started by telling people we're almost there, we're going to get it tomorrow, we're almost there, and that lasted for five or six years when at some point during that period, not the first day, but at some point it became evident that what they were saying was no longer true. Am I generally correct about that? Your Honor, I would say that perhaps in the years prior to where the scheme is actually charged, prior to 2007, maybe in the early 2000s when Ken Jackson and his cohorts were tinkering with this product and putting something together that they may have thought they could make a go of it. But right off the bat in the prospectuses and right off the bat in the representations, they started telling people that the FDA application was filed and imminent when they hadn't even prepared the thing, much less submitted anything to the FDA. You say right from the time they started to raise money from outsiders. Correct. Making this representation. Correct, Your Honor. Has anybody ever sold this thing? I know it got sold to this other similar name and they finally got the FDA approval. Did you buy these things? When I last checked, it still is not on the market. However, my understanding was that they had manufactured some demo units for people who are still true believers or have come on or have some, you know, the investors, they're still hoping somehow that this will come to fruition. But certainly by the date of sentencing in this case, no completely negligible number of units had been sold and those were primarily to investors. And at that point, was there any evidence to support the contention that the outstanding shares were actually worth something? There was not, Your Honor. And, in fact, on that point specifically, the government provided evidence to the district court to establish that the shares had no value of that date. In particular, I would point out that the lack, complete absence of sales, further that in reference to the Healy case, that any to the extent that we had a product that potentially was viable at that point, it was largely through the efforts of third parties to the primary evolutions and then later the Buckley Group. But at the time of that sentencing, not only had there been no sales, but when the Buckley Group took this over, they gave them the patent. They gave them the product and in return the Buckley Group agreed to and gave them the FDA application that was finally filed five years later. And then the Buckley Group in return agreed to try to develop that product, but in return the MSS shareholders would receive a one-third interest in 50 percent. Let me take that back. A 50 percent interest in one-third of the net profits after all the Buckley's cuts. So at that point there was no value and all of that information was submitted to the court. Am I right that there are essentially two groups of stocks here or stockholders? Yes. The court ordered these four guys to surrender their stock. Correct. The government holds that. It was actually went back to the company and therefore then would be part of anything that the shareholders might get. So they basically gave up their stock. The government doesn't physically possess those. It went back to MSS? MSS still exists as an entity. What I'm trying to get at is let's assume that this stuff does hit the market and generates profits and it flows back to the original MSS. Will that money somehow flow to the investors in a way then that credit will be given to these defendants against their restitution obligations down the road if it actually does produce money? No, Your Honor. Why not? Well, a couple of reasons. First of all, under the Healey case, which I believe you were the author of, the focus for the restitution determination as well as for one determining loss is as of the date of sentencing. And prospective potential amounts that I'm not talking about the amount of loss. Okay. I'm talking about credit against somebody's restitution obligation down the road. I don't think Healey dealt with that if I remember. Okay. So maybe I misunderstood you. So your question is? They're ordered to pay $10 million in restitution, joint and several. Right. Five years from now, that stock becomes valuable because the company they sold the product to starts to sell a lot of these things and the royalties flow back. Does that money that then ends up in the hands of investors, presumably through dividends or whatever, do these defendants get credit against that, against their restitution obligation? Does the probation officer basically, I think is the way it works, have the authority to then give them credit for that? Your Honor, I would say to the extent it was disgorged shares, yes. To the extent that they were shares that the shareholders held, no. That's why I said it was two categories. Yes, correct. So the shares of these guys, if their shares that they surrendered back produce something down the road, that will be credited against their restitution obligation. Correct, Your Honor. All right. And as to the shares that the investors hold, they simply reap the benefit of that and it doesn't redound to the benefit of these four guys. Correct, Your Honor. And it is all, but at this point, continues to be entirely speculative. Yes, Your Honor. Thank you. And you realize that even though I don't think this is in the judgment, these guys are going to be able to use your representation to us as an officer of the court down the road to get credit if these shares become valuable. Your Honor, I would tell you that I would be delighted for the investors if they would get a penny back from this horrific scheme that caused them to lose collectively over $9 million. Absolutely, they can use that representation. And I think that the investors themselves would be delighted to get any money back. Your Honors, if you don't have any additional questions, I would just note briefly regarding the issue of claimed prosecutorial misconduct that the first question is whether or not the comment was improper. That's the first thing that you need to decide. And it was tied specifically, if you go through the opening statement, it was tied specifically to the direct evidence of the fraud, the material omission made in this case. And therefore, I would submit that it was not an improper comment. Further, as Judge McKeague, you did, I believe, point out that then even if it was deemed to be improper, then you do an analysis of whether it was flagrant and it was less than a page of 46 pages of transcript, even dealt with the issues of convictions. And it certainly would fall, be considered isolated. It wouldn't be tending to mislead the jury or prejudice the defendant because, again, it was tied specifically to the material omissions made in this case and tied, again, also to the witness testimony that would be heard and was, in fact, then heard throughout the case. Your Honor, also there was a number of questions about the number of times that this was mentioned. I would point out that, again, as you identified, I don't believe there was ever an objection or request on cumulativeness. But in any event, the witnesses, there were 21 investors that testified. And so it was asked the 21 investors both was it disclosed and was it material. So that accounts for a large number of those claimed hundred references. And I would further point out that there were here and there some objections to the form of the question, which caused then the government to have to rephrase the question again. So when you start talking about the counting of those, it was referred to in closing argument as well as one of many different material misrepresentations or omissions that the defendants here made to the investors. Regarding the issue of restitution in particular, as the government pointed out under the Manrique case, that has not been properly preserved by the defendants because they failed to file an appeal after the restitution was ordered. Manrique is very similar facts where you have a deferred restitution order and it specifically holds that the court must or that an appellant must file a second notice of appeal if they wish to challenge the restitution issues. And I would also note for the court under Griffith v. Kentucky 479 U.S. 314 at 328, which is a 1987 case in front of the Supreme Court, that court noted that a new rule for conduct of criminal prosecution applies retroactively to all cases pending on directive review with no exceptions for a new rule that constitutes a clear break with the past. And so the case is cited by… Do you really think the Manrique question is that clear given that it came out after the amended judgments were entered? I do think it's clear not only because I understand about the timing and I can see why you might raise some concern. However, the case is cited… First of all, the rules themselves, Rule 3 and Rule 4 of the appellate procedure make clear that you must file a judgment… I'm sorry, file a notice of appeal after the judgment that you're appealing from. Further, as a Manrique… It seems kind of a low blow, frankly, for the government to be arguing this when the Sixth Circuit President at the time said you didn't have to file a separate appeal and the Supreme Court then says that, well, we don't know if it's jurisdictional, but at least it's claims processing. It's kind of chintzy to try to hold somebody to that obligation when it was not the law at the time at all this happened. Well, Your Honor, I would submit that it was the law. It was clarified by the Supreme Court. However, even if Your Honors were to consider the restitution questions, we nonetheless step back to the government-submitted evidence demonstrating the amount of loss and that the various losses that the investors suffered and further, that the shares had no value. The defendants under the Elson case have the obligation to demonstrate, and Healey, have the obligation to demonstrate that they're entitled to an offset and they did not do that. So not only did the government provide evidence that there was no entitlement to an offset, but the defendants didn't do anything to counter that and it is their burden under the law of this circuit. Your Honor, regarding the issues of sufficiency, I believe we have detailed those extensively and provided numerous citations in the brief. I would raise, simply because it was discussed by Defendant Donohue, that Defendant Donohue's counsel, that Defendant Donohue was an insider here. He held himself out as the FDA counsel. The evidence shows he held himself out as an executive vice president of this company.  and made a slew of representations to Terry Boyce in particular. All those emails were introduced at trial and while defense counsel is correct that some of them refer to we, there also are representations that I, Mr. Donohue, am contacting the FDA or contacting and meeting with the FDA consultant, which were completely untrue representations. And they were made over the course of, I believe, at least a year, if not a year and a half. Let me just say, for whatever it's worth, let's go. You have two senior judges on this panel. Judge Dottry and I have been doing this for a long time. Judge Bush is new. One observation that I would make, which I'm just making it for your benefit, I don't think that it matters to the outcome of this case, but this is an example where the government seems to have very clear proof of misrepresentations in connection with the status of the FDA approval. And then you add on this other stuff, which is questionable and almost could be described as piling on. And you just create real problems, not only for the lower court and the jury, but you create problems for us. And I'm just suggesting that you're the government. You have a higher standard that applies to you. If there's something that you don't need that's of legal question about whether you should be putting that in an evidence, I would just encourage you to revisit that strategy in your next case. Point taken, Your Honor. I will say that the government did not enter into this lightly. It was a combination of the research and all the various circuits that have held that this is a material omission. The second circuit, the third circuit, the fifth circuit, I believe the fourth circuit as well, and combined with the standards set forth in the Daniel case and further in speaking with these investors. And we interviewed these investors at Nauseam. They identified this over and over again, had we known this. And they identified it before it was charged in a trial, charged in an indictment or dealt with at trial. But for all of those reasons, it was important to them. I'm not saying you didn't have reasons. You understand the point. Yeah, absolutely, Your Honor. Your Honor, if I could point out just one last thing. Defendant Donahue makes an objection regarding the victim enhancement, the two-level enhancement. I think his basis was substantial harm, and I would note that that provision has three different disjunctive reasons to add that two-level enhancement, one of which is 10 or more victims in this case. Thank you, Ms. Letzko. Thank you, Your Honors. Mr. Kimball. Your Honors, as you just heard in the government's argument, the government failed to cite a single case from this court, the Supreme Court, a single federal statute or a single federal regulation that would give proper notice to Jackson or any of his co-defendants that they had to disclose these convictions. I just want to make sure that you understand, at least my concern on this is not whether you're necessarily right or wrong about that. It was the question of whether that objection was ever raised to the district judge. I don't think it was. Therefore, it isn't de novo review. It's clear error review, and how can you hold the district judge responsible for not following the cases that you're now citing if nobody ever gives them to the district judge? If I'm right about all that, then we go to manifest injustice, and it doesn't seem like there's manifest injustice here when there's what appears to be almost overwhelming evidence of the other fraud. So your response to that would be helpful. Sure, Your Honor. First, I'd say that this was objected to, it was specifically objected to, that there is no duty to disclose this in the motion in limine. Also, a trial- One sentence in the motion in limine in the context of 404B, is that right? Correct. Not a single case cited. I'd have to say- At that point, not a single case cited, right? Correct. No reply brief after the government, then responds to that one sentence by saying, there are other cases, which there are, that talk about this general materiality, and there's no reply brief to that, right? Correct. So how can that be clear error on the part of the court? So I'd say that it was- I think the motion in limine was sufficient evidence, and it also was objected to at trial. I would refer the court to this court's decision in the United States v. Clay, which says that, when prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great the jurors will use this evidence precisely for the purpose it may not be considered, to suggest that the defendants are bad people, convicted criminals, and if they did it before, they probably did it again. And to address Judge Bush's point on harmless error, this court has said in the United States v. Clay, its focus is not whether there was sufficient evidence on whether the defendant could be convicted without the evidence complained of, it's whether or not there's a reasonable possibility that the jury's verdict was affected through the illicit evidence. I see my time is up. May I continue? I think we've heard enough. Thank you, Your Honor. Thank you, Mr. Kennedy. Your Honors, once the government rang the bell for Mr. Jackson's convictions and continuously used them throughout their case, the other evidence against Mr. Jackson didn't matter at a certain point. The jury decided his verdict based on his past and not what he was on trial for. Because we can't be sure whether or not the jury found him guilty based on those prior convictions and the way they dominated the government's entire case, or on any evidence presented is precisely why he has to have a new trial without those convictions coming in, so that he can be judged by the jury based on the evidence presented, not from 20-year-old convictions. Unless the court has any further questions, I yield the rest of my time. Thank you, Ms. Frank. I note that many of our defendants are represented by CJA counsel. Mr. Goldberg representing Mr. Donahue, Mr. Hastings representing Mr. Schreck, Ms. Salinas and Mr. Kendall representing Mr. DeCiancio, and we really appreciate your participation in this regard. The case will be taken under submission, and would the clerk please call the next case.